FILED
2007 Oct-04 PM 02:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **SCOTT BOYKIN,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CV-06-BE-1841-E** |
| | ] | |
| **HONDA MANUFACTURING OF ALABAMA,** | ] | |
| | ] | |
| **Defendant.** | ] | |

**MEMORANDUM OPINION**

This case comes before the court on Defendant Honda Manufacturing of Alabama, LLC's ("HMA") Motion for Summary Judgment (doc. 13). For the reasons stated below, the court concludes that Plaintiff has not established a *prima facie* case under the Americans with Disabilities Act ("ADA") because no genuine issue of material fact exists regarding whether Plaintiff has a disability, as defined by the ADA; rather, the undisputed facts demonstrate that (1) Plaintiff's impairment does not substantially limit a major life activity, and (2) Defendant did not regard Plaintiff as disabled under the ADA. Consequently, the court will GRANT Defendant's motion, and this case will be DISMISSED WITH PREJUDICE.

## I. RELEVANT FACTS

Plaintiff Scott Boykin alleges that HMA discriminated against him in violation of the ADA by failing to transfer him to a position in which he would not be exposed to heat, humidity, and dust in HMA's manufacturing facility. Because the court concludes that Plaintiff does not have a "disability" as defined in ADA, and, therefore, has failed to establish a *prima facie* case, the court includes here only the facts relevant to Plaintiff's alleged disability and HMA's alleged

perception of disability. The court need not recite the lengthy facts regarding whether Plaintiff is a "qualified individual" and whether HMA made appropriate accommodations. Plaintiff's failure to respond to Defendant's statement of facts is an admission of Defendant's statement of the undisputed facts for purposes of this motion. *See* Uniform Initial Order, app'x II, pp. 16-17 (doc. 5). Consistent with the appropriate standard of review, the court makes any necessary inferences in favor of the Plaintiff.

At its manufacturing plant in Lincoln, Alabama, HMA employs Process Associates and Equipment Service Associates, both of which work in a single, open-area plant. After passing physical and drug screening tests, Boykin began working as a Process Associate on March 25, 2002. As a Process Associate, Boykin worked on an assembly line producing more than 300 vehicles daily. Process Associates must rotate through various tasks on the assembly line, the entirety of which is contained within the single, open-area facility.

In June 2004, a physician diagnosed Boykin with chronic obstructive pulmonary disorder ("COPD"). Boykin's COPD results from smoking approximately one pack of cigarettes daily for more than thirty-two years. Although the prior damage to Boykin's lungs is permanent, cessation of smoking will slow further deterioration to the rate caused by normal aging. At the time of his deposition in February 2007, Boykin had not smoked for two weeks.

COPD causes bronchial spasms of approximately one to three minute durations. Spasms are exacerbated by heat, humidity, and dust. Boykin is able to resume normal activity after a brief resting period. Boykin's COPD is managed by the use of two inhalers; Boykin does not require an oxygen mask, oxygen tent, or any other apparatus to breathe normally. Boykin is able to walk, bathe and dress himself, cook, perform all household chores except dusting, drive his car and a commercial truck, use a riding mower to cut grass, talk, and communicate. Plaintiff

continues to fish and coach girls' softball. Boykin is unable to engage in heavy-exertion sports, gardening, household dusting, and visits to amusement parks.

After his diagnosis in June 2004, Boykin provided Concentra Medical Center, HMA's third-party medical provider, with a letter from Dr. Michael Waldrum, a pulmonologist, which stated that he had treated Boykin for COPD and pneumonia. He indicated that Boykin could return to work without restriction. Boykin did not provide the letter to anyone at HMA. Boykin did provide HMA with a January 2005 letter stating that Boykin could return to work without restriction. The January 2005 letter did not mention Boykin's diagnosis of COPD.

Based only on Boykin's descriptions of HMA's plant, Dr. Waldrum concluded that the conditions within the plant may cause breathing episodes. On March 17, 2005, Dr. Waldrum wrote a letter to Jenny White, an HMA human resources employee, requesting that HMA transfer Boykin to an area with less heat, humidity, and dust. He indicated that these conditions exacerbate Boykin's COPD. Dr. Waldrum explicitly stated that Boykin was "fully capable of working" under different conditions. HMA did not transfer Boykin to another position, but informed him that he could not return to work based on Dr. Waldrum's restrictions. On May 5, 2005, Brenda Thornton, a nurse practitioner, wrote a letter to Ms. White, agreeing with Dr. Waldrum that Boykin should be transferred to a "less abusive work area" but confirming that he was "fully capable to continue working."

Boykin took leave under the Family and Medical Leave Act ("FMLA") beginning March 2005. He received short-term disability benefits and, subsequently, long-term disability benefits through December 2005. Plaintiff has never notified HMA that the restrictions of Dr. Waldrum's March 2005 letter have changed. In March 2007, consistent with its written Associate

Handbook, HMA terminated Boykin because he had been on non-occupational medical leave for more then twenty-four months.

While on non-occupational medical leave from HMA, Boykin began working as a commercial truck driver in October 2006. At the time of his deposition in February 2007, he continued to work as a truck driver twenty to thirty hours per week.

On September 15, 2006, Boykin filed a complaint in this court, alleging that HMA's discrimination deprived him of wages, health insurance benefits, and retirement benefits; he also claims to have suffered mental anguish and emotional distress. Boykin's sole cause of action is violation of the ADA. He seeks compensatory damages, punitive damages, and a permanent position with HMA.

HMA moved for summary judgment on the single cause of action on May 14, 2007. HMA argues that the court must dismiss the complaint because (1) Boykin is not disabled under the ADA; (2) Boykin is not a "qualified individual" under the ADA; and (3) no reasonable accommodations exist that would enable Boykin to work at HMA given his restrictions.

## II. STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). When the burden of proof at trial falls upon the non-movant, the moving

party may support its motion with "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *Id.*

In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (1986). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 251-52.

Furthermore, when the court considers a motion for summary judgment, it must refrain from deciding any material factual issues. All evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). The court must avoid weighing conflicting evidence or making credibility determinations. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000) (quotation marks and citation omitted). Where a reasonable fact finder may "draw more than one inference from the facts, then the court should refuse to grant summary judgment." *Id.*

## III. DISCUSSION

The ADA prohibits a covered entity from discriminating against "a qualified individual with a disability" regarding the terms, conditions, and privileges of employment. 42 U.S.C. §

12112(a). The ADA defines "a qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.*

To establish a *prima facie* case of discrimination under the ADA, and thus survive a motion for summary judgment, a plaintiff must demonstrate that (1) he has a "disability"; (2) he is a "qualified individual"; and (3) his employer discriminated against him because of his disability. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002). The threshold inquiry under the ADA, therefore, is whether the plaintiff has a "disability." *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996) (reversing jury verdict for plaintiff on the ground that plaintiff failed to present sufficient evidence to support *prima facie* case). The ADA defines "disability" in three ways: (1) "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2).

In its brief, HMA does not dispute that Boykin's COPD is an "impairment." "Merely having an impairment," however, "does not make one disabled for purposes of the ADA." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002). The relevant question is whether Boykin's COPD "substantially limits" a "major life activity." Major life activities "refer[] to those activities that are of central importance to daily life," *id.* at 197, such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Gordon*, 100 F.3d at 911 (quoting 29 C.F.R. § 1630.2(I)).

"Substantially limits," in turn, means "'[u]nable to perform a major life activity that the average person in the general population can perform'; or '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life

activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity.'" *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1222 (11th Cir. 2000) (quoting 29 C.F.R. § 1630(j)(1)(i), (ii)) (alterations in original). "[I]mpairments that interfere in only a minor way" with a major life activity do not qualify as disabilities under the ADA. *Toyota*, 534 U.S. at 197. Courts generally consider three factors in determining whether an impairment is substantially limiting: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact of the impairment. *Kay v. Lester Coggins Trucking, Inc.*, 141 F. App'x 824, 827 (11th Cir. 2005); *Chanda*, 234 F.3d at 1222.

In opposition to HMA's motion for summary judgment, Boykin claims that his COPD substantially limits his breathing, walking, yard work, and household chores. At his deposition, however, Boykin indicated that he is able to walk, complete household chores <u>other than dusting</u>, and mow his lawn, but he is <u>unable to garden</u>. The court concludes that these narrow limitations do not "substantially limit" Boykin's ability to perform household chores and yard work. Regardless, yard work and household chores are not major life activities under the ADA. *See, e.g.*, *Weisberg v. Riverside Township Bd. of Educ.*, 180 F. App'x 357 (3d Cir. 2006) (holding that the inability to perform household chores does not substantially limit a major life activity); *Colwell v. Suffolk Co. Police Dep't*, 158 F.3d 635 (2d Cir. 1998) (stating that yard work and gardening are not major life activities). Thus, the only potential life activity remaining in Boykin's argument is breathing.

One cannot deny that breathing is "of central importance to daily life," and, therefore, a major life activity. Accordingly, the relevant question in this case is whether Boykin's COPD

"substantially limits" his breathing. Applying the three factors above, the court concludes that Boykin has failed to present evidence that his COPD substantially limits his ability to breathe.

First, despite evidence that Boykin's COPD affects his breathing, Boykin's reactions are not severe and he manages the condition with rest and inhalers. Second, the duration of Boykin's breathing difficulties are only one to three minutes. Boykin's own testimony established that he experiences temporary bronchial spasms only in the presence of heat, dust, and humidity. Thus, unless Boykin fails to remove himself from an aggravating environment, the impact of his COPD on his breathing is neither permanent nor long-term. The short periods of these spasms, the specific conditions which trigger them, and Boykin's ability to recover from them belie any claim that the spasms substantially limit the major life activity of breathing. *See Cash v. Smith*, 231 F.3d 1301, 1305-06 (11th Cir. 2000) (finding that occasional, brief, incapacitating seizures did not limit any major life activity); *Franks v. Cent. Garden & Pet Co.*, 2007 WL 2320624, at *4 (M.D. Ga. Aug. 10, 2007) (holding that plaintiff's "fragrance intolerance" did not substantially limit her breathing because her reactions were manageable and never severe and she could remove herself from offensive odors).

The most telling evidence that Boykin's COPD does not substantially limit any major life activity is his own deposition testimony, in which he stated that he can walk, bathe and dress himself, cook, perform all household chores except dusting, drive his car and a commercial truck, use a riding mower to cut grass, talk, and communicate. He even continues to fish and coach girls' softball. Significantly, Boykin requires no breathing apparatus. In fact, the only specific activities Boykin testified he is unable to perform include heavy-exertion sports, gardening, household dusting, and visits to amusement parks -- none of which is a major life activity.

In the alternative to actual disability, Boykin alleges that HMA "regarded him as having a physical impairment." HMA admits as much; to violate the ADA, however, HMA must regard Boykin as having a disability -- an impairment that substantially limits a major life activity. *Gordon*, 100 F.3d at 913. Although Boykin may maintain a claim that HMA regarded him as disabled without proof of actually being disabled, *Williams*, 303 F.3d at 1290, the only evidence Boykin identifies bearing upon this point is that HMA prohibited Boykin from working based on Dr. Waldrum's request that HMA transfer Boykin to an area with less heat, humidity, and dust. The court can only construe his argument to be that HMA regarded him as substantially limited in the major life activity of working.

To establish that HMA regarded him as substantially limited in his ability to work, Boykin must demonstrate that HMA believed he was "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'" *Cash*, 231 F.3d at 1306 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). In other words, HMA must consider Boykin precluded from more than one type of job, even if the precluded job is his regular or preferred job. *See Cash*, 231 F.3d at 1306.

HMA's refusal to allow Boykin to work anywhere within the plant, without more, could support a reasonable inference that HMA "regarded" Boykin as disabled, and, thus, preclude summary judgment for HMA. *See Rigby v. Springs Indus., Inc.*, 156 F. App'x 130, 132 (11th Cir. 2005) (reversing district court's grant of summary judgment for employer where employer regarded plaintiff as "unable to perform any manufacturing job"). In this case, however, two undisputed facts undermine that inference. First, Dr. Waldrum's and Ms. Thornton's letters,

which were the only indications of Boykin's impairment that HMA received, explicitly stated that Boykin was fully capable of working absent heat, humidity, and dust.

Second, White -- the human resources employee who reviewed Dr. Waldrum's letter and prohibited Boykin from working -- stated in an affidavit that she did not consider Boykin disabled. Boykin did not dispute HMA's statement of facts in his response, and, therefore, admits this fact. *See* Uniform Initial Order, app'x II, pp. 16-17. Boykin has failed to present evidence that HMA regarded him as substantially limited in the major life activity of working; at most, he has presented evidence that HMA regarded him as significantly restricted in his ability to work in dust, heat, and humidity -- not his ability to work in a wide range of jobs.

Likewise, that HMA knew Boykin received FMLA leave does not raise a genuine issue of material fact regarding HMA's perception of Boykin's impairment. "Disability" under the ADA is not the same as "incapacity" under FMLA. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1295 (11th Cir. 2006) (recognizing that the inability to perform one's current job satisfies FMLA's "incapacity" requirement but not the ADA's "disability" requirement).

While Boykin's COPD constitutes a physical impairment, his deposition testimony and that of his pulmonologist fail to establish a genuine issue of material fact as to any substantial limitation on any major life activity. Similarly, Boykin has not raised a genuine issue of material fact that HMA regarded him as substantially limited in a major life activity. Boykin's COPD, therefore, is not a disability under the ADA.[1] Accordingly, summary judgment for HMA is appropriate. *See Chenoweth v. Hillsborough County*, 250 F.3d 1328 (11th Cir. 2001) (holding

[1] Alternatively, upon review of the parties' briefs and evidentiary submissions, the court concludes that Plaintiff has failed to raise a genuine issue of material fact as to the other elements of his *prima facie* case. The undisputed facts demonstrate that Boykin was not a qualified individual under the ADA because he could not perform the essential duties of positions at HMA and no reasonable accommodation would have allowed him to perform those essential duties.

that summary judgment was appropriate where plaintiff did not show an impairment that substantially limited a major life activity).

## IV. CONCLUSION

For the reasons stated above, the court concludes that Plaintiff cannot establish a *prima facie* case under the ADA because no genuine issue of material fact exists regarding whether Plaintiff has a disability, as defined by the ADA. The undisputed facts instead demonstrate that (1) Boykin's impairment does not substantially limit a major life activity, and (2) HMA did not regard Boykin as disabled under the ADA. Consequently, the court will GRANT Defendant's motion, and this case will be DISMISSED WITH PREJUDICE. The court will enter a separate order consistent with this memorandum opinion.

DATED this 4th day of October, 2007.

Karon O. Bowdre

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE